IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **ROBERT R. JONES,** | ) | |
| Plaintiff | ) | Civil Action No.: 7:14cv00422 |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **LT. KISER, et al.,** | ) | By: Pamela Meade Sargent |
| Defendants | ) | United States Magistrate Judge |

The pro se plaintiff, Robert R. Jones, an inmate incarcerated at Red Onion State Prison, ("Red Onion"), brings this civil rights action pursuant to 42 U.S.C. § 1983, against the defendants Lt. Kiser, ("Kiser"), Lt. G. Adams, ("Adams"), and Correctional Officers Brock, Stidham and Taylor. In his Complaint, Jones alleges that the defendants violated his Eighth Amendment rights through the use of excessive force or their failure to protect and failure to intervene. (Docket Item No. 1, ("Complaint.")) In particular, Jones alleges that he was assaulted by Adams while the other officers stood by without intervening to protect him on November 24, 2013. Jones's claim is before the undersigned upon referral pursuant to 28 U.S.C. § 636(b)(1). An evidentiary hearing was held in this matter on October 5, 2015. For the reasons discussed herein, I recommend that the court enter judgment in favor of the defendants.

*I. Facts*

According to Jones, on November 24, 2013, while an inmate in the D Housing Unit at Red Onion, he did not get a drinking cup with his breakfast tray.

-1-

He later asked about getting a drinking cup with his dinner tray from the correctional officer who was distributing trays in the pod. The officer, who he did not identify, told Jones that he did not have any cups. Jones said he then asked to see the building sergeant. Jones said that this officer must have told Correctional Officers Brock and Stidham that he wanted to speak to the sergeant because they started telling him, "You ain't getting no drinking cup."

At approximately 4:10 p.m., Jones said, Stidham told him that Adams wanted to see him. Jones said that Stidham and Brock escorted him to an office where Adams and Kiser were waiting on him. Jones said that he was escorted to a chair in the sergeant's office, where he sat down with his hands cuffed to the back in front of Adams, who was seated at a desk with a computer on it. Jones said that Adams spun around in his chair to face him once he was seated. Jones said that Adams was within arm's reach of him. He said that Stidham and Brock remained standing in the doorway so no one outside of the office could see inside. He said that Officer Taylor was standing with one foot in a chair to his right and that Kiser was seated in a chair beside the desk with the computer on it located to his left and to the right of Adams.

Jones testified that Adams asked him, "What's up with the request forms with regard to drinking cups?" Jones said that he told Adams that, according to Red Onion policy, each inmate was supposed to be given a drinking cup with his meal tray and that he had not received a cup that day. Jones testified that Adams became upset and told him, "I don't follow no rules or regulations." Then, according to Jones, Adams picked up a green logbook from the desk and hit him in the left side of his forehead. He said Adams then laid the logbook back on the

desk. Jones said the logbook was approximately 8½ inches by 11 inches and contained approximately 100 pages.

Jones said that he asked Kiser for help and for medical treatment. He said that Taylor told him, "I will never give you a drinking cup. If I do, I am going to spit in it." Jones testified that Adams then told him to look at Officer Taylor. At another point Jones testified that he was instructed to look at Adams. Jones said that Adams then put a black glove on his right hand and slapped Jones in the left side of his face with his open hand, hitting him in the eye and splitting his lip, causing it to bleed. He said that he again asked to see someone from the Medical Department. Jones said that Brock and Stidham then took him back to his cell. On the way, he said that they told him he was lucky that all that happened to him was that Adams hit him. He said that Brock told him, "You better be glad I ain't hit you."

Jones said that his left eye ached, he was dizzy, and his left eye was bloodshot and red after Adams struck him. Jones testified that he showed his face to Sgt. Phillips on the night shift, but she refused to let him be seen by someone from the Medical Department. Jones filed An Inmate Request For Information/Service form on November 29, 2013, requesting to be seen on sick call. (Defendants' Exhibit No. 2 (Docket Item No. 49-9)). On this form, Jones stated that he was suffering from a headache, his left eye was burning and his left ear aching as a result of being struck by Adams with a logbook and then slapped in his face by Adams.

Jones said that he did not receive medical treatment for his injuries until five days later when he saw a doctor and told him what had occurred. He said that the

doctor prescribed Tylenol and Motrin for his complaints of headache. Jones said that he also saw a doctor January 9, 2014, about complaints of his eye burning. Jones said that he was still having migraine headaches, and his eye was still burning. He testified that his lip eventually healed. Jones testified that he was scheduled to see an eye doctor on October 15, 2015.

Jones testified that he filed a Regular Grievance form on December 20, 2013, complaining of being assaulted by Adams. (Defendants' Exhibit No. 3 (Docket Item No. 49-10)). On this form, Jones alleged that Adams hit him in the head with a green logbook and then put on black gloves and slapped Jones's face. On this form, Jones claimed that he suffered from a headache and a welt on his face after being slapped. He also said that his left eye was still burning.

On cross-examination, Jones admitted that he had two drinking cups in his cell on November 24, 2013, that he had purchased from the prison commissary. He also admitted that he had been complaining for a while about the prison's failure to provide a drinking cup with every meal tray when the inmates were fed in the pod. Jones also admitted that he had never had any problem with any of the defendants before November 24, 2013, and that he had never filed any Complaints or Formal Grievances against any of the defendants before this incident.

Jones testified that he attempted to file an Informal Complaint regarding the incident on the same day, but Sgt. Phillips refused to give him a form. The Informal Complaint form that he did file was admitted as Defendants' Exhibit No. 1, (Docket Item No. 49-8). Jones also submitted three exhibits into evidence showing that he previously had complained to Red Onion officers about the lack of

drinking cups when offenders were fed meals in the housing unit. (Docket Item Nos. 49-1, -2, -3.)

Garry Adams testified that he was the D Building sergeant at Red Onion on November 24, 2013, but since had been promoted to lieutenant. Adams testified that, as the building sergeant, it was part of his job to investigate informal requests and complaints. Adams stated that, in an average week, he would receive 30 to 40 Informal Complaints, to which he would respond.

Adams testified that, through his reports, he knows that he did speak with Jones on November 24, 2013, but he did not remember many of the details of the meeting. He said he had never had any problem with Jones and that Jones had never done anything threatening toward him. Adams said that he did vaguely remember Jones complaining about not receiving drinking cups. He said that, if the meeting was conducted around 4 p.m., it would have been brief, maybe five minutes at most, because it was near the end of the workday. Adams specifically denied that he struck Jones. He also stated that logbooks are not kept in the sergeant's office, and, instead, are maintained in the individual building pods and control rooms. Adams testified that no incident report was filed regarding the events of that day because no force was used on Jones by any officer. Jones submitted into evidence an October 23, 2014, affidavit signed by Adams, in which he denies that he or anyone else assaulted or struck Jones on November 24, 2013. (Docket Item No. 49-4.) In this affidavit, Adams also stated that he had never denied a request by any offender, including Jones, to receive medical treatment.

Officer Steven Taylor also testified at Jones's October 5, 2015, hearing. Taylor testified that, on November 24, 2013, he was working in the D Housing

Unit at Red Onion. Taylor stated that he remembered that Jones was housed in the D-1 Building in November 2013, and he said that Jones had not made any complaints to him about the lack of drinking cups. Taylor specifically denied that he ever told Jones that he was not going to give him a drinking cup. He also specifically denied that he told Jones that, if he gave him a cup, he would spit in it first. Taylor said that he knew that Jones had reusable cups because he had filled them with juice before. He said that he also had provided Jones with cups of juice before.

Taylor said that he was present in the office when Adams spoke to Jones on November 24, 2013. He said that he was standing to Jones's right, if you were looking into the office. Taylor said that he did not see Adams strike Jones with a logbook or with his hand.

Jones also submitted an October 21, 2014, affidavit, signed by Taylor, into evidence. (Docket Item No. 49-6.) In this affidavit, Taylor stated that he was in the office when Jones was escorted in to talk with Adams. Taylor stated that he did not participate in the discussion, but that no one hit or slapped Jones during this meeting. Taylor also denied, in this affidavit, that he made any threat to spit in Jones's drinking cups. He also denied ever denying any offender, including Jones, any needed medical attention.

Officer Claude Stidham also testified at Jones's hearing. Stidham stated that he was then-currently working at Wallens Ridge State Prison, but he had worked at Red Onion on November 24, 2013. He said that he remembered that Jones was housed in the D-1 Building at Red Onion November 24, 2013. Stidham said that he would help distribute trays at meal time, but he said that he did not remember

Jones ever complaining about not receiving a drinking cup. Stidham said that he did retrieve Jones from his cell on November 24, 2013, and escorted him to the sergeant's office to speak to Adams. Stidham stated that Jones sat down in a chair and that he, Stidham, stood to Jones's left near the door. Stidham said that when offenders were pulled from the cell to meet with someone, they were usually restrained with their hands in handcuffs, but he said he could not remember if Jones's hands were cuffed in front or behind on that date. Stidham testified that he did not recall anything out of the ordinary occurring at this meeting. Stidham specifically denied that Adams struck Jones that day. He said that if he had seen Adams strike Jones, he would have reported it. Stidham also specifically denied that he told Jones he was "lucky it wasn't me, I would have done more than slap you in the face."

Jones also submitted an October 21, 2014, affidavit signed by Stidham into evidence. (Docket Item No. 49-5.) In this affidavit, Stidham stated that no one hit or slapped Jones during his meeting with Adams on November 24, 2013, and that Jones did not tell him that he needed any medical attention when he escorted him back to his cell that day.

Lieutenant Justin Kiser also testified at Jones's hearing that he was present for Adams's meeting with Jones on November 24, 2013. Kiser said that, on that date, he was a sergeant at Red Onion and was assisting the shift commander. Kiser said that Adams came to get the shift commander, Captain Tate, but that Tate was not there, so Adams asked Kiser to be a witness to his meeting with Jones. Kiser said that he recalled that the meeting had to do with a complaint Jones had made about feeding, but he did not recall the specifics. He also said that it was practice at Red Onion to handcuff an offender when he was taken into an office. Kiser said

that the inmates in general population at Red Onion were designated a security level 5 and that Red Onion was the highest security facility in the VDOC. He said the meeting did not last longer than four to five minutes. Kiser said that he was sitting at a desk when the officers brought Jones in the office. Kiser conceded that, as a correctional officer, he was required to complete an incident report whenever force was used on an offender, but Kiser said that he was not aware of any use of force on Jones on that day or any other day.

Jones also submitted an October 23, 2014, affidavit, signed by Kiser, into evidence. (Docket Item No. 49-7.) In this affidavit, Kiser admits that the supervisor's log shows that he participated in a meeting with Jones on November 24, 2013, regarding meal cups. Kiser also stated that he had no knowledge of Adams assaulting or striking Jones. He further stated that, if he had seen such an assault, he would have reported it. He also stated that, if Jones had asked him for medical attention, he would have contacted the Medical Department about Jones's request.

Rebel Deel, Red Onion Assistant Director of Nursing, also testified at the October 5 hearing. According to Deel, Jones's medical records show that he was not seen by anyone in the Medical Department on November 24, 2013. Deel testified that nurses at Red Onion made rounds in each building twice a day for pill call. Deel stated that, on December 2, 2013, Jones saw Diane Yates, R.N., with complaints of headache and left earache, which started two to three days previously. Deel stated that Yates's note makes no mention of any complaints of an assault and did not document any visible signs of injury on Jones. Deel stated that Jones's medical records indicated that he was seen by Nurse Adams on December 10, 2013, for complaints of headache and left eye burning since his prior

medical examination. Deel said that Nurse Adams noted that Jones had no visible injuries. She also said that there was no mention of any alleged assault.

Jones's medical records show that he was seen by Dr. Smith on December 12, 2013, for complaints of headache and left eye pain, according to Deel. Dr. Smith's note stated that Jones had "problems [with] security Thursday." Dr. Smith noted a contusion on Jones's left lateral face temporal area. Jones saw Dr. Smith again on December 19, 2013, with complaints of left side headache and left eyebrow burning. Dr. Smith noted that Jones's conjunctiva looked normal and that his left eye was not red. Deel also testified that x-rays of Jones's facial bones taken on January 9, 2014, were normal. Jones's medical records were admitted into evidence by the defendants. (Docket Item No. 49-12.)

Subsequent to the hearing, Jones submitted, and the court received into evidence, the report of an October 1, 2015, optometry examination of Jones. (Docket Item No. 55.) The report of this examination stated that the reason for the examination was left eye burning. Much of the notes contained in the report are illegible to the court, but it appears that the optometrist diagnosed Jones as suffering from chronic left keratoconjunctivitis, which is an inflammation of the cornea and conjunctiva, as well as nearsightedness and farsightedness. This report makes no mention of any assault or cause of Jones's condition.

The defendants also submitted into evidence an Informal Complaint and Regular Grievance form submitted by Jones, alleging he was assaulted by Adams and then denied medical treatment. (Docket Item Nos. 49-8, -10.)

*II. Analysis*

The Eighth Amendment to the U.S. Constitution not only prohibits excessive sentences, but it also protects inmates from inhumane treatment and conditions while imprisoned. *See Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The unnecessary and wanton infliction of pain by a prison official through the use of excessive force upon an inmate has been clearly established as a violation of the Eighth Amendment's prohibition on cruel and unusual punishment for a number of years. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992). The Eighth Amendment also requires prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984).

While an officer generally may be held liable under 42 U.S.C. § 1983 only for affirmative conduct, the Fourth Circuit held in *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203-04 (4th Cir. 2002), that in certain situations, officers may be liable for failing to act. In recognizing the existence of bystander liability, the Fourth Circuit stated that "[a]ny rule to the contrary would permit officers to ignore their duty to enforce the law" *Randall*, 302 F.3d at 204; *see also Willis v. Oakes*, 493 F. Supp. 2d 776, 784 (W.D. Va. 2007). This court has held that, in order for bystander liability to attach, the plaintiff must demonstrate that the bystander officer (1) knew that another officer was violating the plaintiff's constitutional rights; (2) had a reasonable opportunity to prevent the other officer from committing the violation; and (3) chose not to act. *See Willis*, 493 F. Supp. 2d at 784 (citing *Randall*, 302 F.3d at 204).

In this case, Jones claims that on November 24, 2013, Adams struck him twice, once with a logbook and once with his hand, for no reason other than he complained about the lack of drinking cups, while defendants Kiser, Brock, Stidham and Taylor stood by and failed to take any actions to protect him from Adams's assault. Jones claims that Adams's assault injured his left head and face and left eye. The plaintiff in a § 1983 claim has the burden of proof. *See Oliver v. Powell*, 250 F. Supp. 2d 593, 598 (E.D. Va. 2002). Furthermore, no damages may be awarded absent proof of injury. *See Bernadou v. Purnell*, 836 F. Supp. 319, 326 (D. Md. 1993).

To refute Jones's claims, each of the remaining defendants, with the exception of Officer Brock, appeared at the evidentiary hearing and denied that Adams struck Jones during their November 24, 2013, meeting. The defendants also produced evidence in the form of Jones's medical records showing that he did not seek any medical treatment for any complaints of problems with his head or left eye until December 2, 2013, more than a week after Adams's alleged assault. Furthermore, none of Jones's medical records make any mention of him telling any of his healthcare providers that he was ever assaulted by Adams. This includes the optometry report for treatment rendered on October 1, 2015, more than a year after Jones filed this suit. The only note of any incident is a note in Dr. Smith's December 12, 2013, report that states that Jones had "problems [with] security on Thursday" and had a contusion on the left lateral face temporal area. An injury that Nurse Adams's report specifically indicates was not present on December 10, when she noted no visible injuries on Jones. Also, none of Jones's medical records contain any statement by any of his healthcare providers that his complaints of headaches, left earache and left eye pain and burning were caused by an assault.

Based on this evidence, the court is persuaded that Adams did not strike or otherwise assault Jones on November 24, 2013, and that any subsequent problems with Jones's head, left ear or left eye were not cause by an assault by Adams. Since the court is persuaded that no assault occurred, the remaining defendants cannot be liable for failing to protect Jones.

## PROPOSED FINDINGS OF FACTS AND CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1. The plaintiff has failed to persuade the court that Adams assaulted him on November 24, 2013;
2. The plaintiff has failed to persuade the court that any problem he suffered with his head, left ear or left eye was the result of being struck by Adams on November 24, 2013; and
3. The plaintiff has failed to persuade the court that the remaining defendants failed to protect him from an assault by Adams on November 24, 2013.

## RECOMMENDED DISPOSITION

Based on the above-stated reasons, I recommend the court enter judgment in the defendants' favor on Jones's claims.

.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and unrepresented parties.

DATED: January 27, 2016.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE